FILED

## In the United States District Court
## For the Western District of Texas
## Midland-Odessa Division

OCT - 4 2010

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

In the Matter of:

**Watson Professional Group Inc, ex rel.
Wilson D. Watson and Carol Watson,
Petitioners,**

v.

**The United States Inc., ex rel.
Internal Revenue Service,
Respondent.**

**MO-10-CV 120**

Case No. _____

**Petition to Quash IRS Summons**

**26 U.S.C. § 7609(b)(2) et seq.**

---

**Now comes,** the Petitioners, Wilson D. Watson and Carol Watson in their proper persons as a citizens in the state of Texas, in the relationship of Watson Professional Group Inc, which is a foreign corporation in respect to the United States Inc., and as such, hereby petitions, and moves the Court for an signed order as to quash the hereto attached IRS summons now before the Court for the reasons which herein after appears more fully:

1.    Internal Revenue Service, Revenue Officer, BETSY CRUZ, served by U.S. Mail, two (2) IRS administrative summons upon Community National Bank, with notices upon these petitioners. This summons was sent by mail on the 15th day of September, 2010, and demands a fulfillment or reply from the Community National Bank by the 25th day of October, 2010, see **Petitioner's Exhibit A, "IRS Form 6639 Summons".** These Petitioners in the following, sets forth the respondent parties, jurisdiction and venue of the United States District Court; and petitioner's statutory, jurisdictional, and procedural reasons for need in quashing this instant summons.

### RESPONDENT PARTIES

Community National Bank, located at: 401 West Texas, Midland TX 79701

Internal Revenue Service, Revenue Officer, BETSY CRUZ;
1004 N. BIG SPRINGS, STE 200, MC:5403MID, MIDLAND TX 79701 (432) 688-2874x227

United States Attorney General, Tax Division, U.S. Dept. of Justice, located at 10th Street &

Pennsylvania Ave. N.W., Washington D.C. 20530;

## JURISDICTION AND VENUE

**Petitioners, moves the Court:**

2.      This Court has jurisdiction over the parties pursuant to Article III. Sec. 1.; the 4th and 5th

Articles in Amendment within the United States of America Constitution; Title 28 U.S.C. § 1331,

"Federal Question"; § 1361 "Motion to Compel", and Title 26 U.S.C. § 7609(h)(1). The **United**

**States** is a **foreign corporation** with respect to a **state**. In Re: Merriam's Estate, 36 N.E. 505,

141 N.Y. 479, affirmed 16 S. Ct. 1073, 163 U.S. 625, 41 L. Ed 287.  This Court's venue is proper

for the listed parties pursuant to Title 28 U.S.C. § 1391(e). Action to quash IRS summons must

be brought in district in which summoned party resides. Hersh v United States (1986, ED Wis)

86-2 USTC ¶ 9503, 57 AFTR 2d 86-1371.  This petition and motion is based on the entire file,

Exhibits, and proceedings herein at this time, and is submitted in compliance with 28 U.S.C. §

1331 (Federal Question) and 26 U.S.C. § 7609(b)(2) (Petition to Quash) for a order or judgement

to be drawn by the U.S. District Court as to quash these instant Internal Revenue Service

Summons for lack of proper jurisdictional procedure and the arresting of unlawful actions (scope

of authority) of Revenue Officer, BETSY CRUZ under 26 USC § 7214(3), see statute as follows:

> **26 USC § 7214.  Offenses by officers and employees of the United States.**
> "(a) Unlawful acts of revenue officers or agents.
> Any officer or employee of the United States acting in connection with any revenue law of
> the United States–
> (3) who with intent to defeat the application of any provision of this title fails to perform any
> of the duties of his office or employment; or"

3.      The Supreme Court has held that a person served with an IRS summons has a right to

challenge the summons. Reisman v. Ceaplin, 375 U.S. 440, 450 (1964). See Radio v. C.I.R., 138

F.R.D. 341, 344 (D.R.I. 1991) ("The Authority of the Commissioner to issue summonses under

26 U.S.C. Section 7602 can be challenged by a person served with a summons"). See also

United States v. Genser, 582 F.2d 292, 301 (3d Cir. 1978, cert. denied, 444 U.S. 928 (1979)

(person summonsed may attack summons).

4.      The Petitioner's instant case involves questions of law, regarding the Internal Revenue Service administrative procedures, jurisdictional prerequisites.  The herein Federal Question pursuant to 28 U.S.C. § 1331, is, "Absent the proper administrative procedure, did the I.R.S. Revenue Officer, BETSY CRUZ, have authorization of law, pursuant to IRC section 7602(a), and the Internal Revenue Manual (IRS) procedures, to issue the IRS Summons, for the stated action, reasons, and purpose (scope of authority) as Revenue Officer, BETSY CRUZ, acted upon?

## LAW AND ARGUMENT

5.      For the Court, a brief summation of the Supreme Court's view of the law, regarding the use of summons by the IRS. In United States v. LaSalle National Bank, 437 U.S. 298, at 318, the Supreme Court enumerated several important limitations upon the validity of an Internal Revenue Service summons:

> **First**, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject of the summons, be undertaken. **Second**, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of section 7602. This second prerequisite requires the Service to meet the **Powell** standards of good faith.  It also requires that the service not abandon in an institutional sense, that being the pursuit of civil tax determination or collection. See **United States v. Serubo, 604 F.2d 807, at 811**. In this regard, the Third Circuit has stated that a summonee may properly attack a summons on the grounds that "the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution." See **Genser, 582 F.2d at 301 (quoting Reisman, 375 U.S. at 449).**

> In authorizing the use of administrative summonses, Congress had intended to aid the IRS in the civil collection of delinquent taxes; it did not intend to usurp the traditional role of the grand jury as the primary investigator of criminal activity. See **United States v. Genser, 595 F.2d 146, at 149 (3d Cir.), cert. denied, 444 U.S. 928, and Genser, at 582 F.2d at 306** (the courts, in construing section 7602, have identified a protectable interest in preventing the IRS from encroaching upon what has traditionally been the sole province of the grand jury). Moreover, bad faith is likewise shown when the IRS becomes "an information-gathering agency for other departments, including the Department of Justice." See **LaSalle National Bank, 437 U.S. at 317.** See also **Genser, 582 F.2d at 301 n.14** (Congress never intended the summons authority to broaden the Justice Department's right of criminal discovery).

## SUMMONS VIOLATES POWELL GOOD-FAITH STANDARDS

6.      In United States v. Powell, cited as 379 U.S. 48 (1964), the Supreme Court defined a set of standards which the IRS must meet in order to demonstrate that a summons has been issued

in good faith. The Commissioner must show;

"that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." Id. at 57-58.

Whenever the IRS fails to use its summons authority in good-faith pursuit of the congressionally authorized purposes of **26 U.S.C. section 7602**, the summons is unenforceable. **LaSalle National Bank, supra, 437 U.S. at 318** (Service must meet the Powell standards of good faith).

The first requirement for good-faith issuance of a summons is that "the investigation will be conducted pursuant to a legitimate purpose." Id. at 57. Such purposes do not include "the goal of filing criminal charges against citizens." **LaSalle National Bank, supra, 437 U.S. at 317 n.18.** As set forth in Point IV, supra, the instant summons was issued after an institutional abandonment of civil purpose for the improper purpose of obtaining evidence for use in a criminal prosecution. Such illegal issuance of civil process constitutes a "bad faith" abuse of the powers granted by **26 U.S.C. section 7602** and renders the summons invalid. **Serubo, supra, 604 F.2d at 811.**

7.      The Petitioner now raises a federal question (28 § 1331), and that is this, within the conditions embraced in the following history of procedure in this case, or the lack thereof, and under the rational of agency subject matter jurisdiction, the Petitioner motions the Court to considering the summons "Good faith" and "Legitimate Purpose" doctrines in this case, regarding the agency's claim of "Form 941 for the Quarterly period ending December 31 2008 presumed to be a "tax liability". Pursuant to this instant claim as raised by Revenue Officer, BETSY CRUZ, against **Watson Professional Group Inc**, the petitioners challenge the subject matter jurisdictional claim of this purported federal agency as allowed pursuant to Title 5 U.S.C. (APA) and as set forth by the United States Court as follows:

Equal Employment Opportunity Commission, v. Karuk Tribe Housing Authority; (2000 9th Cir.) No. 00-16181: "The general rule of Endicott Johnson in favor of enforcement of administrative subpoenas thus stands. But it is not absolute. Although a party may not avoid an administrative subpoena on the ground that it has a valid defense to a potential subsequent lawsuit, **such a challenge may, in limited circumstances, be mounted when the defense raised is "jurisdictional" in nature -- i.e., when the agency lacks jurisdiction** over the subject of the investigation. See Marshall v. Burlington Northern, Inc., 595 F.2d 511, 513 (9th Cir. 1979) (noting that judicial determination of agency jurisdiction prior to exhaustion is limited). But even where this exception is concerned, the role of a court reviewing a subpoena attacked on jurisdictional grounds is "strictly limited." Casey v. FTC, 578 F.2d 793, 799 (9th Cir. 1978). **"As long as the evidence sought is relevant, material and there is some `plausible' ground for jurisdiction, or to phrase it another way, unless jurisdiction is `plainly lacking,' the court should enforce the subpoena."** Children's Hospital, 719 F.2d at 1430 (quoting Burlington Northern, 595 F.2d at 513)." * * *

\* Here the jurisdictional question is particularly sensitive because it involves the Karuk Tribe, which, like other tribes, enjoys a unique legal status as a sovereign. See Montana v. Blackfeet Tribe, 471 U.S. 759, 764 (1985). In this context, the prejudice from compliance is real. See Great Lakes, 4 F.3d at 492 ("The Commission should not be burdened with having to comply with a subpoena if, as the district court believed, the agency issuing it has no jurisdiction to regulate the wages that the Commission pays. **Questions of regulatory jurisdiction are properly addressed at the subpoena-enforcement stage if, as here, they are ripe for determination at that stage.** Compliance with a subpoena is a burden, and one that a person or institution that can show it is not subject to the regulatory regime in aid of which the subpoena was issued should not be required to bear." (citations omitted)); see also EEOC v. Cherokee Nation, 871 F.2d 937 (10th Cir. 1989) (adjudicating issue of applicability of the ADEA to Indian tribes in the context of a subpoena enforcement action). The Tribe's challenge to the EEOC's administrative subpoena is jurisdictional in nature and thus may be resolved here as a matter of law."

Based upon the before mentioned, the Petitioners instant case involves questions of law, regarding the Internal Revenue Service administrative procedures, jurisdictional prerequisites, and the lack of the necessary findings under and within their primary jurisdiction, see case as follows:

> United States v. General Dynamics Corp., 828 F.2d 1356 at 1362-1363 (9th Cir 1987); "[5] **There are four factors** uniformly present in cases where the **[Primary Jurisdiction]** doctrine properly is invoked: **(1)** the need to resolve an issue that **(2)** has been placed by Congress within the jurisdiction of an administrative body having regulatory authority **(3)** pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that **(4)** requires expertise or uniformity in administration. [See, e.g., Ricci v Chicago Mercantile Exch., 409 US 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); United States v Western Pac. R.R., 352 US 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); United States v Pacific & A. Ry. & Navigation Co., 228 US 87, 33 S.Ct. 443, 57 L.Ed. 742 (1913); United States v Yellow Freight Sys., 762 F.2d 737 (9th Cir. 1985).]"

8.    The Petitioners suggest to the Court that because of the failure of the IRS to operate under the law. The enabling legislative statutes sets forth the powers as granted to the Secretary of the Department of the Treasury, in short, his duty is to enforce the Internal Revenue Code (IRC), and not write procedures without a law for their foundation.  Title 26 U.S.C. contains about 110 separate taxing statutes which pursuant to United States v. Community TV, Inc., 327 F.2d 797, at 800; states, **"Without question, a taxing statute must describe with some certainty the transaction, service, or object to be taxed, and in the typical situation it is construed against the Government.** Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858." Lewyt Corp. v. Commissioner, 349 U.S. 237, p. 237, 99 L Ed 1029, pp. 1031 - 1032; **"When Congress**

wrote the word "imposed" into § 122(d)(6), it might have used it in one of two different senses—either to identify the tax or to define the amount of the tax that is to be levied and collected." From the above two cited cases, by law, a "taxing statue" must describe with certainty the transaction, service, or object to be tax, and also set forth the rate or percentage of the tax,  see the following example of a taxing statute:

> 26 USC § 4001. Imposition of tax.
> (a) Imposition of tax.
> There is **hereby imposed on the 1st retail sale of any passenger vehicle a tax** equal to **10 percent** of the price for which so sold to the extent such price exceeds $30,000... As was said also by our Supreme Court in the following cases:
>
> United States v. Merriam, 263 U.S. 188, 68 L.Ed. 244  "On behalf of the government it is urged that taxation is a practical matter, and concerns itself with the substance of the thing upon which the tax is imposed, rather than with legal forms or expressions. But in **statutes levying taxes** the literal meaning of the words employed is most [263 US 188] important, for such statutes are not to be extended by implication beyond the clear import of the language used.  If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.  Gould v. Gould, 245 U. S. 151, 153, 62 L. ed. 211, 213, 38 Sup. Ct. Rep. 53.  The rule is stated by Lord Cairns in Partington v. Atty. Gen. L. R. 4 H. L. 100, 122.
>
> I am not at all sure that in a case of this kind—a fiscal case—form is not amply sufficient; because, as I understand the principle of all fiscal legislation, it is this:  **If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be.  On the other hand, if the Crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free,** however apparently within the spirit of the law the case might otherwise appear to be.  In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in **a taxing statute**, where you can simply adhere to the words of the statute."  And see Eidman v. Martinez, 184 U. S. 578, 583, 46 L. ed. 697, 701, 22 Sup. Ct. Rep. 515."

9.    The respondent's past history may state that, "The power of the United States government to levy income taxes is established in the Sixteenth Amendment to the United States Constitution, which states:

> "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration. U.S. Const. Amend. XVI."

The respondent would be wrong as a matter of law, because the 16th Amendment did not give the Congress the power to impose an income (excise) tax, rather it gave to Congress the power to impose an income (excise) tax with out "apportionment".  Congress possessed the power to

impose an excise tax as measured by net income for statutory created activities, transaction, or services they would chouse to tax.  See confirming cases as follows:

Evans v. Gore., 253 US 245, pp. 259 - 261, 64 L Ed 887, pp. 895 - 896; **"In other words, the purpose of the Amendment was to eliminate all occasion for such an apportionment because of the source from which the income came, — a change in no wise affecting the power to tax, but only the mode of exercising it.** The message of the President<fn 5> recommending the adoption by Congress of a joint resolution proposing the Amendment, the debates<fn 6> on the resolution by which it was proposed, and the public appeals,<fn 7>—corresponding to those in the Federalist,—made to secure its ratification, leave no doubt on this point.  And that the proponents of the Amendment, in drafting it, lucidly and aptly expressed this as its object, is shown by its words:  "The Congress shall have to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

Peck & Co. v. Lowe., 247 US 165, pp. 172 - 174, 62 L Ed 1049, pp. 1051 - 1052;  "The 16th Amendment, although referred to in argument, has no real bearing and may be put out of view.  As pointed out in recent decisions, **it does not extend the taxing power to new or excepted subjects, but merely removes all occasion, which otherwise might exist, for an apportionment among the states of taxes laid on income,** whether it be derived from one source or another. Brushaber v. Union P. R. Co. 240 U. S. 1, 17-19, 60 L. ed. 493, 501, 502, L.R.A.1917D, 414, 36 Sup. Ct. Rep. 236, Ann. Cas. 1917B, 713; Stanton v. Baltic Min. Co. 240 U. S. 103, 112, 113, 60 L. ed. 546, 553, 554, 36 Sup. Ct. Rep. 278."

South Carolina v Baker (1988, US) 99 L Ed 2d 592, 108 S Ct 1355, 88-1 USTC ¶ 9284, 61 AFTR 2d 88-995, later proceeding (US) 1988 US LEXIS 2089. " . . . **and that sole purpose of Sixteenth Amendment was to remove apportionment requirement** for whichever incomes were otherwise taxable."

Brushaber v. Union P. R. Co, 240 US 1, pp. 17 - 20, 60 L Ed 493, pp. 501 - 502; "This is the text of the Amendment:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

It is clear on the face of this text that it does not purport to confer power to levy income taxes in a general sense,—an authority already possessed and never questioned,— [240 US 18] or to limit and distinguish between one kind of income taxes and another, but that **the whole purpose of the Amendment was to relieve all income taxes when imposed from apportionment** from a consideration of the source whence the income was derived.  Indeed, in the light of the history which we have given and of the decision in the Pollock Case, and the ground upon which the ruling in that case was based, there is no escape from the conclusion that the Amendment was drawn for the purpose of doing away for the future with the principle upon which the Pollock Case was decided; that is, of determining whether a tax on income was direct not by a consideration of the burden placed on the taxed income upon which it directly operated, but by taking into view the burden which resulted on the property from which the income was derived, **since in express terms the Amendment provides that income taxes, from whatever source the income may <\*pg.502> be derived, shall not be subject to the regulation of**

apportionment."

10.     The respondent would or may further state, that "In order to ensure that all persons are paying their income taxes, the IRS and its commissioned agents are authorized to investigate any person to determine whether he is paying all income taxes owed. 26 U.S.C. § 7601. As a part of the investigative process, IRS Agents are authorized to serve summonses on third-parties to obtain records relevant to the investigation. 26 U.S.C. §§ 7602 and 7609. See also La Mura v.United States, 765 F.2d 974 (11th Cir. 1985)" This prompts a question to the Court pursuant to 28 USC § 1331, as such, how would the petitioner know if he was required to file returns or pay a tax, when the IRS it self refuses to supply that correct taxing statute information to the petitioner?  Can this U. S. District Court answer this specific question without prejudice, or citing ex post facto law?  In the case of United States v. Powell, cited as 379 U.S. 48, at pages 57-58 the court states,

> "A court may inquire into the underlying reasons for the examination to ensure that its process is not being abused.  Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."

11.     Therefore, in order that by law the Petitioners may be brought within the subject jurisdiction of the agencies enabling legislation, the IRS would be required under the mandates of their primary jurisdiction, to cite before the Court, upon the face of the IRS summons document, the correct "taxing statute" which gave rise or provides foundation to the IRS's alleged "Form 941 tax liability" of these Petitioners in this case.  The legal foundation for this in part, is because the term "taxable income" which also embraces "employment taxes" is set forth or cited 220 times in Title 26 U.S.C. Internal Revenue Code, and further cited some 1,257 times under Title 26, Code of Federal Regulations.  This definitely is a generic phrase and as such the phrase "taxable income", "income tax", or "tax liability", nor "employment tax liability" can not be strictly construed, and is only used as a generic term, which is not enough to establish agency subject matter jurisdiction, as some kind of tax liability, as further set forth by the court in, Pennsylvania Co. for Ins., etc. v. Rothensies (1944, CA3 Pa) 146 F 2d 148, 44–2 USTC 9524, 33 AFTR 342; **"Tax statutes are**

to be strictly construed and are not to be extended by implication beyond clear import of

their words." See other cases as follows:

> General Atlas Carbon Co. v. Sheppard, 37 F.Supp. 51: "On the other hand, **tax laws are not to be liberally const rued in such a way as to include such matters for taxation which are not clearly within the law.** The tax statutes must be strictly construed, in that it must clearly appear that the matter attempted to be taxed falls within the terminology of the tax statute. Gould v Gould, 245 U.S. 151, 38 S.Ct. 53, 62."

> United States v. Missouri Department of Revenue, (1990) 772 F. Supp. 453, 457; 1990 U.S. Dist. LEXIS 14539; 37 Cont. Cas. Fed. (CCH) ¶ 76,236; **"Taxing statutes must be construed strictly,** and taxes will not be assessed against the United States unless they are expressly authorized by law. St. Louis Country Club v. Administrative Hearing Comm'n, 657 S.W.2d 614, 617 (Mo. banc 1983)."

12.    One of the requirements of the IRS Form 941 Employer's Quarterly Federal Tax Return,

is that it much be signed under the penalties of perjury. Does the law (IRS) expect an

impossibility, does it require a taxpayer to guess at the law under Title 26 U.S.C., the Supreme

Court ruled that it does not, see United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed. 2d

423, 430; Panama Ref. Co. v. Ryan, 293 US 388, 79 L ed 446, 55 S Ct 241; and Texaco, Inc. v

Short, 454 U.S. 516, pp. 545 - 546, 70 L Ed 2d 738, pp. 761 - 762.


13.    It would seem to the Petitioner, that under rational of the requirements of due process, step

A by the IRS, is notice, the agency due process notice statute is set forth in the Internal Revenue

Code under section 6001, which provides in part, "by notice served", and section 6011(a), in

provides in part "When required by regulations", one must file a return. When the IRS does not

follow its own governing statutes, by informing this Petitioner as to the taxing statute and its

implementing regulations, it is as if they are forcing this Petitioner "to push a string in a straight

line", this of course is an impossibility, see legal authority as follows:

> U.S. v. Mobil Corp, 82-1 USTC ¶ 9242 at 83,506, 543 F.Supp. 507, 513 (12/18/81); "The first codification of the Internal Revenue laws appeared in 1939... The exception was that the record and return provision required taxpayers to make returns and statements and keep records **where the Commissioner served notice on them, but it did not require them to perform these acts in the absence of notice by the Commissioner...** When it enacted § 6001 as part of the 1954 Code, Congress eliminated the 1939 Code's record and return provisions which related to specific types of tax liability and combined the requirement that taxpayers keep certain types of records and make returns and statements **with the requirement that they perform these acts upon notice by the Commissioner.**

Section 6001 was included in the 'Records, Statements and Special Returns' portion of the Subtitle of the Code concerning 'Procedure and Administration,' which suggests that Congress did not intend for § 6001 to serve as an authorization to inspect records."

**Federal Register / Vol. 51. No. 100 / Friday, May 23, 1986 / Notices at page 18989 Order No. 24 (Rev.1) Handbook of Delegation Orders; MT 1229-131 at page 1229-14**
Effective date: 5-12-86
Authority to Require Records to be Kept
　　　The Assistant Commissioner (International) and District Directors of Internal Revenue are hereby authorized <u>to require any person, **by notice served upon him,**</u> to keep such records as shall show whether or not such person is liable for tax under the revenue code of 1954.
　　　This Order supersedes Delegation Order No. 24, issued February 29, 1956.
/s/ James I. Owens, Deputy Commissioner
[FR Doc., 86-11594 Filed 5-22-86. 8:45 am]

**1981-2 C.B. 225; 1981 IRB LEXIS 207; Rev. Rul. 81-205**
"Enforcement of the provisions of Rev. Rule 71-20 **is normally carried out through the District Director's notice to taxpayers to retain records** under paragraphs (d) and (e) of section 1.6001-1 of the regulations, and the summons to produce records under section 7602 of the code and section 301.7602-1 of the Regulations on Procedure and Administration."

**INTERNAL REVENUE SERVICE MANUAL HANDBOOK HB 4233 6/14/94**
PART IV - Audit and Investigation
CHAPTER:    Chapter 500 Audit Techniques-International Enforcement Program
SECTION:    530 Summons and Related Issues in IRC 482 and Other Cases
SUBSECTION-1:    532 Taxpayer's Books and Records
TEXT:   (1) The Service can require a taxpayer to keep such permanent books of account or records as are sufficient **to determine whether or not the taxpayer is liable for tax under Subtitle A** of the Code. NOTE: A district director may require a taxpayer to keep specific records for future years **by serving notice in accordance with regulation 1.6001-1(d).** Refer to IRM 4271.2 for procedures where taxpayers fail to maintain proper records.
　　　(2) The Service can request an appropriate officer of the corporation to provide information. If the corporate officer requested to give information refuses to do so, the Service can issue a summons to the officer requiring the information. See 534 below.

<u>Texaco, Inc. v Short</u>, 454 U.S. 516, pp. 545 - 546, 70 L Ed 2d 738, pp. 761 - 762; "Thus, we have recognized certain very limited circumstances in which a State's reliance on the maxim that a man may be presumed to **know the law** is not consistent with the restrictions imposed by the Constitution on legislative action.  In **Lambert v California**, 355 US 225, 2 L Ed 2d 228, 78 S Ct 240 (1957), a municipal ordinance made it an offense for any convicted felon to remain in the city of Los Angeles for more than five days without registering with the police.  **We held that the ordinance, which purported to deprive a person of liberty for failing to register, could not be applied to a person who neither knew, nor could reasonably have been expected to know, of his legal obligation.** As we noted:  '[W]e deal here with conduct that is wholly passive--mere failure to register.  It is unlike the commission of acts, or the failure to act under circumstances that [454 US 546] should alert the doer to the consequences of his deed.  The rule that 'ignorance of the law will not excuse' is deep in our law, as is the principle that of all the powers of local government, the police power is 'one of the least limitable.'  On the other hand, due process places some limits on its exercise. **Ingrained in our concept of due process is**

**the requirement of notice.** Notice is sometimes essential so that the citizen has the chance to defend charges. **Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act."**

U.S. v. Batchelder, 442, U.S. 114, 123, 99, S.Ct. 2198, 2203 (1979); **"Due process requires that a person be given fair notice** as to what constitutes illegal conduct, so that he may conform his conduct to the requirements of the law."

Mahler v. Eby, 264 US 32, 44 S Ct 283; "It is essential that where an executive is exercising delegated legislative power he should substantially **comply with all the statutory requirements** in its exercise."

Wichita R. & Light Co. v. Public Utilities Commission, 260 US 48, 43 S Ct 51; "It is a wholesome and necessary principle that an **administrative agency must pursue the procedure and rules enjoined upon** it in the performance of its function **and show a substantial compliance therewith to give validity to its action.**"

Borgnis v. Falk Co., 147 Wis 327, 133 NW 209, 37 LRA(NS) 489; "However, for the purposes of review, it has been said that clear violations of law in reaching the result, such as acting without evidence when evidence is required, or making a decision contrary to all the evidence, **are just as much jurisdictional error as is the failure to take the proper steps to acquire jurisdiction at the beginning of the proceeding"**

Now when considering the above list law, and when considering the amount of indictments, that have been handed down, past or present, for violations of Title 26 U.S.C. § 7206(1) "falsified return", is not acceptable for these Petitioners to guess at the law, as to when a tax form or return is required to be signed under the penalties of perjury, because that IRS tax form is then treated by the United States Courts as a "confession of judgment", and action of summary judgment upon these Petitioners.

**14.** These Petitioners further challenges the administrative procedure under which the summons was issued. In doing so, the Petitioners further state that the IRS did not have in personam nor subject matter jurisdiction, over the third party records if the subject matter or personam jurisdiction prerequisites were lacking over theses Petitioners. This lack of jurisdiction was caused by the IRS's failure to follow the statute and regulations pursuant to 26 USC § 6001, "are required to be served legal notice". These Petitioner's past letters have never answered by the IRS, as to what taxing statute created a tax liability for these employment tax filings upon

these Petitioners, therefore these Petitioners nor the summonsed third party can answer the

summons with any affirmative response, only a guess at the IRS actions of demand due to the

language upon the face of the Summons Form 6639 which states in part as follows:

> "You are hereby summoned and required to appear before BETSY CRUZ, an officer of the Internal Revenue Service, **to give testimony** and to bring with you and to produce for examination the following books, records, papers, and other data **relating to the tax liability** or for the purpose of inquiring into **any offense connected with the administration or enforcement** of the internal revenue laws concerning the taxpayer identified above for the periods shown.
> **Copies of documents and records** that you possess or control that concern banking matters of the taxpayer named above, as described in the subparagraphs checked below for the periods shown:
> **Bank signature cards** in effect of (Entity Name) WATSON PROFESSIONAL GROUP INC from 10/01/2008 to 12/31/2008
> **Corporate resolutions** in effect of (Entity Name) WATSON PROFESSIONAL GROUP INC from 10/01/2008 to 12/31/2008
> **Bank statements** of (Entity Name) WATSON PROFESSIONAL GROUP INC from 10/01/2008 to 12/31/2008
> (Number) 20 **Cancelled checks** issued by taxpayer for (Entity Name) WATSON PROFESSIONAL GROUP INC during each month of the period from 10/01/2008 to 12/31/2008
> **Loan applications**: agreements, and related records, (including corporate financial statements), submitted by, entered into by, or in effect regarding (Entity Name) WATSON PROFESSIONAL GROUP INC from 10/01/2008 to 12/31/2008"

These petitioners request and answer from the court pursuant to Title 28 U.S.C. § 1331, as to just

how can the purported IRS without subject matter jurisdiction, be in compliance with the financial

privacy act, see law as follows:

> **CHAPTER 35.  RIGHT TO FINANCIAL PRIVACY**
> **12 USC § 3401.  Definitions**
> **For the purpose of this title, the term—**
> > **(1) "financial institution" means any office of a bank,** savings bank, card issuer as defined in section 103 of the Consumers Credit Protection Act (15 U.S.C. 1602(n)), industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution, located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands;
> > **(2) "financial record" means an original of,** a copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution;
> > (3) "Government authority" means any agency or department of the United States, or any officer, employee, or agent thereof;
> > **(4) "person" means an individual or a partnership of five or fewer individuals;**
> > **(5) "customer" means any person or authorized representative of that person** who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name;

(6) "holding company" means—
    (A) any bank holding company (as defined in section 2 of the Bank Holding Company Act of 1956 [12 USCS § 1841]);
    (B) any company described in section 4(f)(1) of the Bank Holding Company Act of 1956 [12 USCS § 1843(f)(1)]; and
    (C) any savings and loan holding company (as defined in the Home Owners' Loan Act [12 USCS § § 1461 et seq.]);".
(7) "supervisory agency" means with respect to any particular financial institution, holding company, or any subsidiary of a financial institution or holding company, any of the following which has statutory authority to examine the financial condition, business operations, or records or transactions of that institution, holding company, or subsidiary--
    (A) the Federal Deposit Insurance Corporation;
    (B) Director, Office of Thrift Supervision;
    (C) the National Credit Union Administration;
    (D) the Board of Governors of the Federal Reserve System;
    (E) the Comptroller of the Currency;
    (F) the Securities and Exchange Commission;
    **(G) the Secretary of the Treasury, with respect to the Bank Secrecy Act and the Currency and Foreign Transactions Reporting Act (Public Law 91-508, title I and II); or**
    (H) any State banking or securities department or agency; and
**(8) "law enforcement inquiry" means a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto.**

**15.**    Based upon the heretofore mentioned, and as to the law of agency subject matter jurisdiction, **and in the light that a summons must serve a legitimate (lawful) purpose** and also the "good faith standards as set forth in <u>United States v. Powell</u>, cited as 379 U.S. 48, 57–58, in which the Supreme Court held that, "The IRS must show **(1)** that the investigation will be conducted pursuant to a **legitimate purpose; (2)** that the inquiry may be **relevant to the purpose.** The legal term "legitimate" as defined by Black's Law Dictionary, states, "That which is lawful, legal, recognized by law, or according to law." The legal term "relevant" by Black's Law Dictionary, means, "Applying to the matter in question". It is upon these two points of rational, that this Petitioner submits to the Court the following rational:

**(1)** That the powers of Congress are limited by the Constitution of the United States as ruled in <u>Gregory v Ashcroft</u>, 115 L Ed 2d 410, 111 S.Ct. 2395;
**(2)** That Internal Revenue Service is under the authority of the United States as a federal agency;
**(3)** All federal agencies are agencies of limited jurisdiction, like the federal courts;
**(4)** And agency jurisdiction is dependent entirely upon the validity and the terms of the statutes reposing power in them, and they cannot confer jurisdiction on themselves as ruled in, <u>NLRB v Denver Bldg. & Constr. Trades Council</u>, 341 US 675, 95 L Ed 1284;
**(5)** Agency subject matter jurisdiction means the agency's scope of authority under the

statute;

**(6)** Without subject matter jurisdiction, agency acts are void and open to collateral attack as ruled in, <u>Doolan v Carr</u>, 125 US 618, 31 L Ed 844, 8 S Ct 1228;

**(7)** An administrative agency cannot enlarge its own jurisdiction nor can jurisdiction be conferred upon the agency by parties before it; thus, deviations from an agency's statutorily established sphere of action cannot be upheld because based upon agreement, contract, or consent of the parties. Nor can they be made effective by waiver or estoppel, as ruled in <u>Plaquemines Port, Harbor & Terminal Dist. v Federal Maritime Com.</u>, 267 US App DC 238, or 838 F2d 536, and as further ruled in <u>Endecott v. Perkins</u>, 317 U.S. 501, wherein the court stated, "It is basic in our law that an administrative agency may act only within the area of 'jurisdiction' marked out for it by law.  If an individual does not come within the coverage of the particular agencies enabling legislation the agency is without power to take any action which affects him." and as furthered in <u>Walling v. La Belle S.S. Co.</u>, 148 F. 2d 198, wherein the court stated, "Jurisdiction is essential to give validity to determination of administrative authorities and, without jurisdiction, their acts are void.";

**(8)** That congress imposes taxes by statute, as ruled in <u>Scottich Union & Nat. Ins. Co. v. Bowland</u>, 196 U.S. 611, 629, wherein the court stated, "It may be conceded that no tax can be levied without express authority of law, but the statutes are to receive a reasonable construction with a view to carrying out their purpose and intent.", and as further stated in <u>United States v. Bennett.</u>, 232 US 299, pp. 304 - 307, 58 L Ed 612, pp. 615 - 616, wherein the court held, "We do not cite or review the cases relied on because we concede that the doctrine which it is asserted they decided is elementary, and in fact is the settled rule in this court.  The principle of the cases is thus stated in the argument:  'It is a settled rule of constitutional law that the power to tax depends upon jurisdiction of the subject-matter of the tax.  A long line of unbroken authority illustrates this firmly established doctrine in its various aspects, and although the cases have all arisen under state tax laws, their reasoning is applicable to and controlling in the case of a Federal tax act.'; and further ruled in <u>United States v. Merriam</u>, 263 U.S. 188, 68 L.Ed. 244 wherein the court: "On behalf of the government it is urged that taxation is a practical matter, and concerns itself **with the substance of the thing upon which the tax is imposed,** rather than with legal forms or expressions.  But in statutes levying taxes the literal meaning of the words employed is most [263 US 188] important, for such statutes are not to be extended by implication beyond the clear import of the language used.  If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer. <u>Gould v. Gould</u>, 245 U. S. 151, 153, 62 L. ed. 211, 213, 38 Sup. Ct. Rep. 53.  The rule is stated by Lord Cairns in <u>Partington v. Atty. Gen.</u> L. R. 4 H. L. 100, 122";

**(9)** "The mere computations of an agent do not legally determine a tax liability." as ruled in <u>United States v. Taylor</u>, 305 F.2d 183, at 187; and also as stated in <u>Botta v. Scanlon</u>, 288 F 2d 504, 508 (2nd Cir. 1961); "A reasonable construction of the taxing statutes does not include vesting any tax official with absolute power of assessment against individuals not specified in the statutes as persons liable for the tax without an opportunity for judicial review of this status before appellation of 'taxpayer' is bestowed upon them and their property is seized and sold.", and as stated in another way in <u>United States v. Merriam</u>, 263 U.S. 188, 68 L.Ed. 244 wherein the court stated: "as I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be.  On the other hand, if the Crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be.  In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute."  And see also <u>Eidman v. Martinez</u>, 184 U. S. 578, 583, 46 L. ed. 697, 701, 22 Sup. Ct. Rep. 515.";

And lastly **(10)** Based upon the foregoing 9 points of law concerning agency subject matter

jurisdiction, and the rule that the imposition of a tax is by statute, not by an agency.  It then follows that the person summonsed, must be liable for a specific tax imposed by Congress pursuant to Article 1, § 7, Cl 1, and as limited by IRC § 7602(a), that a tax liability must be factual and in evidenced before a summons may issue, in order to give the IRS agency subject matter jurisdiction to issue a summons which would be required to serve a legitimate purpose and relevant to the purpose.

16.    As explained in the language of IRC § § 7601(a) and 7602(a) confers two separate and distinct powers.  Under IRC § 7601(a) General rule, it states in part that, "The Secretary shall, . . . cause officers or employees of the Treasury Department to proceed, . . . through each internal revenue district and **inquire after and concerning all persons therein who may be liable to pay any internal revenue tax,** and all persons owning or having the care and management of any objects with respect to which any tax is imposed."   The phrase, **"inquire after and concerning all persons therein who may be liable"**, means a grant of a general power or authority to the Secretary, as to make a informal verbal inquiry as to a tax liability, this statute does not grant the Secretary the power or authority to summons the person or records.

17.    The summons authority again is specifically limited under IRC section 7602(a)(2), which provides the authority to summon, etc, the language in part states, **(2) To summon the person liable for tax or [and] required to perform the act,** or any officer or employee of such person, or any person having possession, custody, or care of books of account containing **entries relating to the business of the person liable for tax or [and] required to perform the act, . . .".**  The language clearly shows that under a formal inquire, one must have a tax liability as a prerequisite to the issuance of a relevant and legitimate summons, this is also reproved by the regulation under IRC § 7602, which is cited as 26 CFR § 301.7602-1(b) Summons, which reads in part, "For the purposes described in paragraph **(a) of this section the Commissioner is authorized to summon the person liable for tax or [and] required to perform the act,** or any officer or employee of such person or any person having possession, custody, or care of books of accounts containing **entries relating to the business of the person liable for tax or [and] required to perform the act, . . .".**  The language again clearly shows limits, that this petitioner

must have a tax liability as a prerequisite to a summons.  In light of the statutory language and the rational of agency subject matter jurisdiction it stands to reasonable limits, that the power to summons must be within the scope of the agency's subject matter jurisdiction, (enabling legislation) that is under IRC § § 7801(a), 7802(a), 7803(a) and 7805(a) which is basically to enforce and administer the Internal Revenue Code (taxing statutes), but first there must be a tax imposed (a taxing statute) before a tax can be enforced, and therefore any action by the Secretary without a tax liability as evidenced by a specific taxing statue in evidence of law, is therefore an act without subject matter jurisdiction.  The imposition of a tax (a taxing statute) by Congress upon a class of persons, transactions, objects, or products, creates the subject matter jurisdiction authority for the agency, and therefore gives subject matter jurisdiction to the agency over the specific class of persons, transactions, or objects, as specified by congress pursuant to a United States statute.

18.    The Petitioners after having set forth above the foundation of law as to proper agency administrative procedures now then set forth the specific legal reasons as to the lack of subject matter jurisdiction over the petitioners in the relationship connected Watson Professional Group Inc.  Again the claim as made by Revenue Officer, BETSY CRUZ, pertains to the IRS Form 941 Employer's Quarterly Federal Tax Return as shown upon the face of the IRS Summons, see as attached **Petitioner's Exhibit B, "Form 941 and Instructions"**.  The claim of a tax liability and therefore subject matter jurisdiction for the authority of the summons is based upon the legal filing requirement of this Form 941 by the Watson Professional Group Inc.  Yet is is unknown as the to requirements under the law until one inspects the 941 document to ascertain the **Office of Management and Budget (OMB)** 8 digit number as assigned to identify the law pertaining to the use of the document, see the controlling federal regulations which apply to OMB # 1545-0029 as follows:

[Code of Federal Regulations] [Title 26, Volume 20] [Revised as of April 1, 2008] From the U.S. Government Printing Office via GPO Access [CITE: 26 CFR 602.101] [Page 141-158] **TITLE 26--INTERNAL REVENUE**

CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
PART 602_OMB CONTROL NUMBERS UNDER THE PAPERWORK REDUCTION
ACT--Table of

**26 CFR Sec. 602.101  OMB Control numbers. Contents**

**(a) Purpose.** This part collects and displays the control numbers assigned to collections of information in Internal Revenue Service regulations by the **Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1980.** The Internal Revenue Service intends that this part comply with the requirements of Sec. Sec. 1320.7(f), 1320.12, 1320.13, and 1320.14 of 5 CFR part 1320 **(OMB regulations implementing the Paperwork Reduction Act),** for the display of control numbers assigned by OMB to collections of information in Internal Revenue Service regulations. This part does not display control numbers assigned by the Office of Management and Budget to collections of information of the Bureau of Alcohol, Tobacco, and Firearms.

**(b) Display.**

------------------------------------------------------------------

| Controlling Federal Regulation | Current OMB |
|---|---|
| **CFR part or section where identified and described** | **control No.** |

------------------------------------------------------------------

| | |
|---|---|
| 31.3102-3................................................. | 1545-0029 |
| 31.3121(b)(19)-1......................................... | 1545-0029 |
| 31.3121(r)-1.............................................. | 1545-0029 |
| 31.3121(s)-1.............................................. | 1545-0029 |
| 31.3306(c)(18)-1......................................... | 1545-0029 |
| 31.3401(a)-1.............................................. | 1545-0029 |
| 31.3401(a)(6)-1.......................................... | 1545-0029 |
| 31.3401(a)(7)-1.......................................... | 1545-0029 |
| 31.3401(a)(8)(A)-1 ...................................... | 1545-0029 |
| 31.3401(a)(8)(C)-1 ...................................... | 1545-0029 |
| 31.3402(h)(1)-1.......................................... | 1545-0029 |
| 31.3402(h)(3)-1.......................................... | 1545-0029 |
| 31.3404-1................................................. | 1545-0029 |
| 31.3504-1................................................. | 1545-0029 |
| 31.6001-6................................................. | 1545-0029 |
| 31.6011(a)-1............................................. | 1545-0029 |
| 31.6011(b)-2............................................. | 1545-0029 |
| 31.6053-1................................................. | 1545-0029 |
| 31.6065(a)-1............................................. | 1545-0029 |
| 31.6205-1................................................. | 1545-0029 |
| 31.6413(a)-1............................................. | 1545-0029 |
| 31.6413(a)-2............................................. | 1545-0029 |
| 31.6413(c)-1............................................. | 1545-0029 |
| 31.6414-1................................................. | 1545-0029 |
| 32.1...................................................... | 1545-0029 |
| 32.2...................................................... | 1545-0029 |
| 35a.9999-5............................................... | 1545-0029 |
| 36.3121(1)(10)-1......................................... | 1545-0029 |
| 36.3121(1)(10)-3......................................... | 1545-0029 |
| 301.6316-7............................................... | 1545-0029 |

(26 U.S.C. 7805) [T.D. 8011, 50 FR 10222, Mar. 14, 1985]
Editorial Note: For Federal Register citations affecting Sec. 602.101, see the List of CFR Sections Affected, which appears in the Findings Aids section of the printed volume and on GPO Access.

**19.**    As one can realize these regulations are from within 26 CFR Part 31 - Employment Taxes and Collection of Income Tax at the Source.  In order to discover the controlling law for the Form 941 the legal question must be answered as to just who it the Employee and the Employer as defined by law, and what is the type of relationship that is identified by law. For that legal answer see statues and regulations as follows:

**(a)**    The Statute at Large that originated the "Federal Government Employee" tax, in which these Statutes and Code sections apply, is found in August 1, 1862, Volume 12, Page 472, Chapter 119, Section 86.  The Thirty-seventh Congress, Session II, Chapter 119, of July 1, 1862, Section 1 through 119, established **"An Act to provide Internal Revenue to support the Government and to pay Interest on the Public Debt."**  The Gross Income definition of the public employee or officer is in effect today, as it was never repealed nor amended, the words or terms pertaining to the public employee or officer were omitted from the IRC of 1928 only as "surplusage" as explained in report of the House of Representatives, 70th Congress, 1st Session, Union Calendar No. 3, Report No. 2, at page 12, under the heading, "Technical and Administrative Provisions".  Again these individuals were not private individuals.  After the Supreme Court decided the case of <u>Evans v. Gore</u>, 253 U. S. 245, 64 L. ed. 887, 40 S. Ct. 550, 11 A.L.R. 519; in the year 1930 the definition of gross income was amended once again, see as follows:

> **Internal Revenue Title** (IRC 1939)
> Chapter 1 - Income Tax - Subchapter B - Part II - Computation of Net Income
> **26 U.S.C. Sec. 22. GROSS INCOME.**
> (a) GENERAL DEFINITION. – "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. **In the case of Presidents of the United States and judges of courts of the United States taking office** after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly."

**(b)**    Later during the same year of 1939, the Public Salary Tax act was passed, and as such, the definition of Gross Income again changed adding State officers or employees to the text, this

definition remains in effect to this date, as the statutory language pertaining to "and income derived from salaries, wages, or compensation for personal service", has never be repealed nor amended, see as follows:

**26 U.S.C. § 22. Gross income–(a) General definition.** "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service **(including [meaning] personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing)**, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; **and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.** In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income. **(As amended April 12, 1939, c. 59, Title I, § § 1, 3, 53 Stat. 574, 575.)**

(c)     To include both the IRC "Statutes at Large" of 1928 and the later 1939, under the heading "Gross Income Definition" the language would read as follows:

**§ 22. Gross income–(a) General definition.** "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including [meaning] personal service as an **officer or employee of a State**, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), **and all other officers and employees, whether elected or appointed, of the United States**, or any political subdivision thereof, or the District of Columbia, the compensation received as such of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

(d)     The same gross income definitions of "employee or officer" which were found in the above list IRC statutes, were restated once again by amending the 1939 IRC, as found and published on September, 7th, 1943 (See Federal Register, Volume 8, Number 177, at pages 12262 and 12267).   These same definitions were codified under the 1954 IRC, and have remained substantially the same, under 26 U.S.C. § 3401(c) and 26 CFR § 31.3401(c)-1, see as follows:

**Title 26 U.S.C. § 3401.  Wage withholding; Definitions.**
3401(c) Employee.  For purposes of this chapter, the term "employee" includes an **officer, employee, or elected official of the United States**, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing.    The term **"employee" also includes an officer of a corporation**. (emphases added)

**26 CFR § 31.3401(c)-1. Definitions; Employee.** [regulation]
(a) The term employee includes every individual performing services if the relationship between him and the person for whom he performs such services **is the legal relationship** of employer and employee. The term includes officers and employees, whether elected or appointed, of the United States, a State, Territory, Puerto Rico, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing.
(f) All classes or grades of employees are included within the relationship of employer and employee. Thus, superintendents, managers and other supervisory personnel are employees. Generally, an officer of a corporation is an employee of the corporation. (emphases added)

Raber v. Commissioner of Internal Revenue, 20 B.T.A. 975, 978; "In Metcalf & Eddy v. Mitchell, 269 U.S. 514, the Supreme Court of the United States said:  An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, **and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation.** United States v. Hartwell, 6 Wall. 385; Hall v. Wisconsin, 103 U.S. 5. The term "officer" is one inseparably connected with an office; but there was no office of sewage or water supply expert or sanitary engineer, to which either of the plaintiffs was appointed. The contracts with them, although entered into by authority of law and prescribing their duties, could not operate to create an office or give to plaintiffs the status of officers. Hall v. Wisconsin, supra; Auffmordt v. Hedden, 137 U.S. 310. There were lacking in each instance the essential elements of a public station, permanent in character, **created by law, whose incidents and duties were prescribed by law.** See United States v. Maurice, 2 Brock. 96, 102, 103; United States v. Germaine, 99 U.S. 508, 511, 512; Adams v. Murphy, 165 Fed. 304."

**26 CFR § 31.3401(d)-1. Definitions; Employer.** [regulation]
(c) An employer may be an individual, a corporation, a partnership, a trust, an estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization, group or entity. A trust or estate, rather than the fiduciary acting for or on behalf of the trust or estate, is generally the employer.
(d) The term employer embraces not only **individuals and organizations engaged in trade or business,** but organizations exempt from income tax, such as religious and charitable organizations, educational institutions, clubs, social organizations and societies, as well as **the governments of the United States, the States, Territories, Puerto Rico, and the District of Columbia, including their agencies, instrumentalities, and political subdivisions.**

**(e)**      All of the above entities within 26 U.S.C. § 3401, 26 CFR § 31.3401(c)-1, and 26 CFR §

31.3401(d)-1 are "created or organized in the United States or under the law of the United States

or of any State."   These do not include [mean] private individuals or private natural persons.  As

individuals or persons which are "created or organized under the law", are not private individuals, nor private natural persons.  Further, the definition of the term person shown under 26 U.S.C. § 7701(a)(1) and 26 CFR 301.7701-1, again also includes [means] only those entities which are "created or organized in the United States or under the law of the United States or of any State." See current statute and regulation as follows:

> **26 USC § 7701. Definitions.**
> **(a) When used in this title,** where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
> **(1) Person.** The term 'person' shall be construed to mean and include an **individual**, a trust, estate, partnership, association, company or corporation.
>
> **26 CFR 301.7701-1 Classification of organizations for tax purposes.**
> (a) Person. The term **"person"** includes an individual, a corporation, a partnership, a trust or estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization or group. Such term also includes a guardian, committee, trustee, executor, administrator, trustee in bankruptcy, receiver, assignee for the benefit of creditors, conservator, or any person acting in a fiduciary capacity.

**(f)**     Further, under the following federal definition of the "employee", it does not define the private employee, same said as the one having a private contractual relationship within the same definition, instead it defines the individual who's position constitutes a **"legal relationship of employer and employee"**, it is defined as a **legal relationship** because it is by law created or organized by or under State or Federal statutes or regulations, see for example Title 5, U.S.C. Chapters 53, 57, 61, 63, et seq.  See also <u>Estate of Folwell</u>, 68 N.J. Eq. 728, 62 A. 414 and regulation as follows:

> **26 CFR § 31.3401(c)-1(a) : Employee.** [regulation]
> (a) The term employee includes every individual performing services if the relationship between him and the person for whom he performs such services **is the legal relationship of employer and employee**. The term **includes** [means] officers and employees, whether elected or appointed, of the United States, a State, Territory, Puerto Rico, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing. (emphases added)
>
> <u>Raber v. Commissioner of Internal Revenue</u>, 20 B.T.A. 975, 978; "In Metcalf & Eddy v. Mitchell, 269 U.S. 514, the Supreme Court of the United States said:  An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, **and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation.** United States v. Hartwell, 6 Wall. 385; Hall v. Wisconsin, 103 U.S. 5. The term "officer" is one inseparably connected with an office; but there was no office of sewage or water supply expert or sanitary engineer, to which either of the plaintiffs was appointed. The

contracts with them, although entered into by authority of law and prescribing their duties, could not operate to create an office or give to plaintiffs the status of officers. Hall v. Wisconsin, supra; Auffmordt v. Hedden, 137 U.S. 310. There were lacking in each instance the essential elements of a public station, permanent in character, **created by law, whose incidents and duties were prescribed by law.** See United States v. Maurice, 2 Brock. 96, 102, 103; United States v. Germaine, 99 U.S. 508, 511, 512; Adams v. Murphy, 165 Fed. 304." (emphases added)

**(g)** The private employee or private individual has a "contractual relationship" with the private employer, and not a "legal relationship", see <u>Ashton v Boston & Maine Railroad Co.</u> 22 Mass 65, 109 N.E. 820 and the findings by the U.S. Supreme Court as follows:

<u>Indiana Ex Rel. Anderson v. Brand.</u>, 303 U.S. 95, pp. 105 - 106, 82 L. Ed. 685, pp. 693 - 694; "Until its decision in the present case the Supreme Court of the State had uniformly held that the teacher's right to continued employment by virtue of the indefinite contract created pursuant to the Act was contractual. In Elwood v. State, 203 Ind. 626, 180 N. E. 471, 81 A.L.R. 1027, it was said (p. 634): **"The position of a teacher in the public schools is not a public office, but an employment by contract between the teacher and the school corporation. The relation remains contractual** after the teacher has, <*pg.694> under the provisions of a teachers' tenure law, become a permanent teacher—but the terms and conditions of the contract are thereafter governed primarily by the statute."

**(h)** The above Federal and State definitions of "employee", list a class of individual which has been "created or organized under the laws of the United States or a State", therefore defined as legal entities, by the **"legal relationship"** and not a **"contractual relationship"** by private citizens or private natural persons.  A position of employment which has been created or organized under the laws of the United States or a State is generally a privilege.  Privileges are subject to a excise tax, and are taxed upon the amount of the net income from the privileged trade, business, or vocation, see case authority as follows:

<u>United States v Philadelphia, B. & W.R. Co.</u> (E.D.Pa. 1920) 262 F. 188, 190; "[4] We are concerned wholly with an excise tax. Whether it is a scientifically accurate concept of it or not, the concept of it as **a charge for the privilege of following an occupation or trade, or carrying on a business,** gives us a fairly good working idea of what it is. **It is in consequence, an indirect tax, and has no reference to earnings or income, except that the sum of such earnings or income may (as anything else may) be made the measure of the tax.** An income tax, on the contrary, is a direct tax imposed upon the thing called income, and is as directly imposed as is a tax on land." (emphases added)

**Title 5 USC § § 7301 and 7311; Other provisions:**
Security requirements for government employees. Ex. Or. No. 10450 of April 27, 1953, 18 Fed. Reg. 2489, as amended by Ex. Or. No. 10491 of Oct. 15, 1953, 18 Fed. Reg. 6583; Ex. Or. No. 10531 of May 27, 1954, 19 Fed. Reg. 3069; Ex. Or. No. 10548 of Aug 3, 1954, 19 Fed. Reg. 4871; Ex. Or. No. 10550 of Aug. 6, 1954, 19 Fed. Reg. 4981; Ex. Or. No.

11605 of July 2, 1971, 36 Fed. Reg. 12831; Ex. Or. No. 11785 of June 4, 1974, 39 Fed. Reg. 20053; Ex. Or. No. 12107 of Dec. 28, 1978, 44 Fed. Reg. 1055, effective 1/11/79, provided:

"WHEREAS the interests of the national security require that **all persons privileged to be employed in the departments and agencies of the Government** shall be reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States; and

"WHEREAS the American tradition that all persons should receive fair, impartial, and equitable treatment at the hands of the Government requires that **all persons seeking the privilege of employment or privileged to be employed in the departments and agencies of the Government** be adjudged by mutually consistent and no less than minimum standards and procedures among the departments and agencies governing the employment and retention in employment of persons in the Federal service: . . . "

Brown, a Minor, etc., et al., v. Stewart et al., Department of Health Services, 129 Cal. App. 3d 331; 181 Cal. Rptr. 112; 1982 Cal. App. LEXIS 1324 "Defendants assert the **contractual relationship** described in section 3333.1 is between the provider and the organization. * * * Defendants assert such terminology includes the State of California in the context of the Medi-Cal program, reasoning that the state is an "organization" which makes payments to health care providers pursuant to a contract or agreement to provide health care services. We conclude the suggested statutory interpretation is unsound. [*339] In California Medical Assn. v. Lackner (1981) 117 Cal.App.3d 552 [172 Cal.Rptr. 815], this court considered the **legal relationship** between the state and those physicians and dentists who provide health care services to Medi-Cal recipients. We concluded that pertinent statutes and regulations amounted to an offer by the State to pay scheduled fees to physicians and dentists for services rendered to Medi-Cal patients and that by the act of providing services to a particular Medi-Cal patient the provider accepted the offer thereby forming an implied contract. (P. 561.) We adopted the language of California Assn. of Nursing Homes etc., Inc. v. Williams (1970) 4 Cal.App.3d 800, at page [***15] 817 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735], and stated the administrative regulations implementing the statutory policy of section 14105 of the Welfare and Institutions Code '"amount to an offer which, when accepted by performance, culminates in a contract between the government and the offeree.'" (Pp. 560-561.) **In reliance upon Lackner defendants contend there exists a "contract or agreement" within the meaning of section 3333.1. * * * This reliance is misplaced. The term "contract" in section 3333.1 refers not to an implied, unilateral contract between the payor and the provider of services** as discussed in Lackner, but rather to an express, bilateral contract between the payor and the recipient of services.

Northern Securities Company v. United States, 193 U.S. 197; 24 S. Ct. 436; 1904 U.S. LEXIS 933; 48 L. Ed. 679 "A corporation, while by fiction of law recognized for some purposes as a person and for purposes of jurisdiction as a citizen, **is not endowed with the inalienable rights of a natural person,** but it is an artificial person, created and existing only for the convenient transaction of business." (emphases added)

Berg v. City of Minneapolis (S. Ct. 1966) 143 N.W.2d 200, 274 Minn. 277 Page 282; **"Public employment is not a right but a privilege,** and, under an ordinance validly enacted, a municipality may impose reasonable restrictions upon employees as part of the terms of their employment." (emphases added)

Head v. Special Sch. Dist. No. 1 (S. Ct. 1970) 182 N.W.2d 887, 288 Minn. 496 Page 509; **"It is fundamental that there exists no constitutional right to government employment** (Adler v. Board of Education, 342 U.S. 485, 72 S. Ct. 380, 96 L. ed. 517, 27

A.L.R. [2d] 472), and a state may, as a condition of employment, require compliance with any reasonable and nondiscriminatory restriction upon the activities of its employees in the exercise of rights to which state employees as citizens might otherwise be constitutionally entitled."  (emphases added)

Hedrick v. United States 16 C.C. 88, 100 "The Attorney-General requested us to find, and we have found, that Warden, in his capacity as clerk, did not take the oath prescribed on Title XIX of the Revised Statutes. **The statute required that oath to be taken by every person elected or appointed to any office, whether of honor or profit.**" (emphases added)

State v. Northwestern States Portland Cement Co., 84 NW 2d 373 at 53;  **"An excise tax is an indirect charge for the privilege of following an occupation or trade, or carrying on a business;** while an income tax is a direct tax imposed upon income and is as directly imposed as is a tax on land.  United States v Philadelphia, B. & W.R. Co. (E.D.Pa.) 262 F. 188.  The constitutionality of the tax depends upon the substance of the statute and the real character of the tax, rather than upon the name given the tax by the legislature." (emphases added)

## SUMMATION

20.    Whereas herein established, under the legal statutory definitions of employee and employer, it is a "legal relationship" as it sets forth how and why it applies to federal employees or officers who are within the jurisdiction United States corporation, they are not private workers by a contract, yet their relationship is legal being controlled by statues and regulations as set forth by the United States Congress. The private citizens who serve Watson Professional Group Inc., operate by private contract, and in no way are "persons privileged to be employed in the departments and agencies of the Government", and as such do not have any of the government benefits, protections, nor are privileged to be employed.  Therefore, Watson Professional Group Inc. cannot file with the IRS 941 Form without committing perjury as to the information as the 941 Form does request.  See as attached the **Congressional Record** which explains these points of law as raised herein.

21.    **Therefore,** this petitioner moves and motions the Court pursuant to 28 USC § 1361, to order or compel the Internal Revenue Service, or Revenue Officer, BETSY CRUZ, who made the claim that this petitioner has a Form 941 tax liability, to then and therefore produce the taxing statute, and its controlling regulations which disprove the herein listed positions of law as set forth by these Petitioners, as previously requested by these Petitioners, and that it be made upon the

record of the Court, as to establish subject matter jurisdiction, and therefore prove good faith and the legitimate and relevant purpose doctrines under the Powell, and LaSalle U.S. Supreme Court holdings, and if the jurisdictional information as sought by these petitioners is not provided, that the IRS, or their employees or officers be enjoined from further proceedings against these petitioners unless and until the time when the proper legal procedures can be followed by the IRS.

**Wherefore,** these Petitioners prays for an order or judgement under FRCvP Rule 52(a), for a ruling that the Internal Revenue Service has failed to prove subject matter jurisdiction to enforce these instant summons, due to a denial of due process, lack of proper administrative procedures, and lack of subject matter jurisdiction by the Internal Revenue Service, being that the Good faith and Legitimate Purpose doctrine were not followed as required by the Supreme Court of the United States, the Internal Revenue Code and Regulations, and the Internal Revenue Manual.

The statements as made by these petitioners in this Petition to Quash, and as to the actions taken by these Petitioners regarding the response and request documents as sent to the IRS, and to all other Petitioner's stated facts, are made and affirmed under the penalty of perjury, under the Laws of the United States of America, to the best of the Petitioners knowledge, pursuant to Title 28 U.S.C. § 1746(1).

**Respectfully submitted to the U.S. District Court, on this 4th day of October, in the year 2010.**

Wilson D. Watson          Carol Watson
P.O. Box 11186, Midland, Texas 79702-8186
Phone (432) 520-9200

## CERTIFICATE OF SERVICE

This is to certify that a copy of the forgoing **Petitioner's Petition to Quash IRS Summons** was served on Respondent by [what kind of mailing] mail the same on October 4th, 2010 in a U.S. postage paid wrapper addressed or by personal service did as follows:

Community National Bank, located at: 401 West Texas, Midland TX 79701

Internal Revenue Service, Revenue Officer, BETSY CRUZ;
1004 N. BIG SPRINGS, STE 200, MC:5403MID, MIDLAND TX 79701 (432) 688-2874x227

United States Attorney General, Tax Division, U.S. Dept. of Justice, located at 10th Street & Pennsylvania Ave. N.W., Washington D.C. 20530;

Dated: October 4th, 2010.

Private Citizen, Mr. Wilson D. Watson
4705A Dentcrest Drive, Midland, Texas 79707
Phone (432) 520-9200